G-baham, Judge,
delivered the opinion of the court:
This case comes on demurrer to the plaintiff’s petition. The plaintiff was a producer of bituminous coal and owned and operated a mine in the State of West Virginia, after the price for the sale of coal had been fixed by the President under the authority of the act of August 10, 1917, 40 Stat., 276, known as the Lever Act, and plaintiff claims that owing to labor troubles and car shortage it was unable to produce its coal at the price fixed except at a loss; that it petitioned the Fuel Administration to allow it to sell at a higher price than that fixed on the ground that it could not produce its coal except at a loss, which petition was refused. It continued thereafter to produce and sell its coal at a loss and seeks to recover the amount of said loss represented by the difference between the cost of production and the selling price, together with a reasonable profit, which it liquidates on the basis of 20 per cent of its capital stock.
The facts of this case are very similar to those in the case of the Pine Hill Coal Company v. United States, 55 C. Cls., 433, and it is ruled by the principles announced in the decision in that case and the case of Morrisdale Coal Company v. United States, id., 310.
The question of the constitutionality of the act of August 10, 1917, known as the Lever Act, under the provisions of which recovery is sought in this case, is not questioned here, nor is the constitutional right of Congress to fix' the price and to delegate that authority to the President and to empower him in its exercise to use any such agency as he might see fit'to create. It is admitted that the President did, under *442 the authority of that act, fix the price of coal for producers of coal; that he created and used the agency of the Fuel Administration for this purpose; and that he did not use. the Federal Trade Commission. Nor is it questioned that when Congress authorized the President to fix the price, if nothing more had been said in the act, there could be no recovery because such fixing of the price, under the circumstances surrounding the passage of the act, is not such a taking of property as would entitle the plaintiff to compensation.
The plaintiff in its brief attempts to distinguish its case from that of the Pine Hill Coal Company v. United States, supra, upon the ground that the claim for recovery in that case was based upon paragraph 4 of section 25 of said act of August 10, 1917, and that the opinion in that case was based upon a construction of that paragraph, which is as follows:
“ That if the prices so fixed, or if, in the case of the taking over or réquisitioning of the mines or business of any such producer or dealer, the compensation therefor as determined by the provisions of this act be not satisfactory to the person or persons entitled to receive the sanie, such person shall be paid seventy-five per centum of the amount so determined and shall be entitled to sue the United States to recover such further sum as added to said seventy-five per centum will make up such amount as will be just compensation in the manner provided by section twenty-four, paragraph twenty, and section one hundred and forty-five of the Judicial Code.”
The court did not construe or attempt to construe paragraphs 13 and 14 of said section 25, under the provisions of which the plaintiff claims the right to recover. These paragraphs are as follows:
“ Having completed its inquiry respecting any commodity in any locality, it shall, if the President has decided to fix the prices at which any such commodity shall be sold by producers and dealers generally, fix and publish maximum prices for both producers of and dealers in any such commodity, which maximum prices shall be observed by all producers and dealers until further action thereon is taken by the commission.”
“ In fixing maximum prices for producers the commission shall allow the cost of production, including the expense of operation, maintenance, depreciation, and depletion, and shall add thereto a just and reasonable profit.” .
*443 The answer to this contention is the concluding paragraph of the opinion of the court in the Pine Hill Coal Company case, supra, which is as follows:
“ It is our conclusion that the Lever Act does not create a liability on the United States to producers of coal who sold their product at the prices fixed by the Government.”
As stated, in the case at bar the plaintiff was a producer and “ sold its product at the prices fixed by the Government,” and is claiming a liability upon the part of the Government by reason of its fixing a price for the sale of coal. The theory of the plaintiff’s recovery seems to be that gTanting the power of Congress to authorize the President to fix prices without allowing compensation, and that by reason of the act of fixing-prices the plaintiff would have no right to recover compensation resulting therefrom, yet it was within the power of Congress in authorizing the fixing of prices to allow compensation for any loss incident thereto, if it saw fit, and thereby render the Government liable therefor, and that this is what it did and what it was its intention to do in this act, as shown by the provisions of said paragraphs 13 and 14 of section 25, which indicate, it is claimed, that Congress intended in fixing the prices to allow “ the cost of production, including the expense of operation, maintenance, depreciation, and depletion * * * and a just and reasonable profit ” as compensation, which it is claimed the Fuel Administration, acting for the President, did not do originally in fixing the price and afterwards refused to do when the plaintiff petitioned it for a higher price upon the ground that it could not produce its coal at the- price fixed except at a loss. The. plaintiff therefore contends that Congress intended by these paragraphs to thus create a liability upon the part of the United States Government in fixing the price to allow to producers the cost of production and a reasonable profit, and that from this liability arises an obligation upon the part of the Government to fix the price upon that basis and that its failure to do so gives the plaintiff a right to recover any loss incident to its failure in fixing the price so as to allow the cost of production and a reasonable profit, which loss the plaintiff claims to have sustained in the sale of its product.
*444 Opinion of tko Court.
To the suggestion that these paragraphs only applied when the President should see fit to use the Federal Trade Commission as his agency in fixing the price, and that he did not use it.but used the Fuel Administration, the plaintiff contends that the mere creation and use of the Fuel Administration does not set aside the intention of Congress, as shown by paragraphs 13 and 14, to fix liability upon the Government. It is urged that the question is not what agency the President used in fixing the price but what the act intended should be the rights of the plaintiff in the matter of fixing the price, and that the choice of the agency was a mere administrative detail; that if it appears that Congress intended to create a liability upon the part of the Government, should the Federal Trade Commission be used, it indicates an intention to create it no master what agency was used; the question being not what means is used in fixing the price but how it was fixed — upon what basis. The answer to this contention might well be that taking these two paragraphs in connection with those immediately preceding them and in connection with the other paragraphs of section 25, it is clear that they are'merely directory in character, intended to indicate in a general way the administrative process to be followed by the Federal Trade Commission if the President saw fit to use it to aid him in the exercise of the judgment and discretion given him by the act to fix the price in case he ■ found that he could use the slow and labored proceedings prescribed in the act. The word “ allow,” in paragraph 13 of section 25, is used in the sense of “calculate ” — take into account and is not imperative. Assuming for present purposes that nowhere else in the act, other than in paragraphs 13 and 14, has Congress shown an intention to treat the fixing of the price as a taking of property, it is plain that had the President used the Federal Trade Commission it would have been as a mere instrumentality to 'id his judgment and discretion in fixing the price, and that after the Federal Trade Commission had recommended the price, under the powers given him under the act, the President could have disregarded the price so fixed and fixed another, if in his judgment he deemed it necessary, upon any basis he saw fit, and a producer would not have been entitled to any compen *445 sation for loss arising from his' act of so doing. Had he in fixing the price so acted, it would be presumed that he had in mind the suggestions of paragraphs 13 and 14 as to the method of arriving at the price, but whatever he did the exercise of his judgment and discretion as to the method of arriving at the price would certainly not be reviewable in this court. However, the plenary powers and authority given the President by the act are shown in section 1, which authorizes him to “ make such regulations and to issue such orders as are essential effectively to carry out the provisions of this act.” Section 2 authorizes him “ in carrying out the purpose of this act * * * to create and use any agency or agencies * * And paragraph 1 of section 25 says that he “ shall be, and he ishereby, authorized and empowered, whenever and wherever in his judgment necessary for the efficient prosecution of the war, to fix the price of coal and coke, wherever and whenever sold, either by producer or dealer, to establish rules for the regulation of and to regulate the method of production, sale, shipment, distribution, apportionment, or storage thereof among dealers and consumers, domestic or foreign.”
These paragraphs indicate an intention to confer the amplest authority and discretion upon the President in fixing the prices for the sale of coal by producers and dealers, and this is in keeping with the purpose of the act as set out in the recital. The courts will not attempt to construe the act so as to limit or restrict this authority and discretion to fix the price, but rather to uphold it. Certainly it is not to be limited by a strained construction of isolated provisions of the act. Any such limitation must appear to be plain and positive and not doubtful. Further, the first paragraph of section 25 says “ said power and authority may be exercised by him in each case through the agency of the Federal Trade Commission during the war or for such fart of said time as im Ms judgment may be necessary.” It is clear that whether he should use the Federal Trade Commission or not was optional, and even if he saw fit to use it he could at any time cease to use it and use some other instrumentality and pursue some other course in fixing the price if in his judgment it was necessary. The reason for this would seem to be *446 plain. The country was at war; this act was a war measure; as the act recites, “ it is essential to the national security and defense, for the successful prosecution of the war.” It was plain that it might be necessary for the President to fix the price promptly without the use of the Federal Trade Commission or any agency in fixing it and without the loss of time incident to the full investigation of the facts by any agency, and particularly by the somewhat elaborate and necessarily slow method of fixing this price suggested by paragraphs, 11,12,13, 14, and 15 of said section 25.
Congress intended to give the President the broadest discretion in fixing the price and did not intend to hamper or tie him down by requiring him to pursue a certain method of procedure or be guided by certain facts and conditions in fixing the price. If this view of the act be correct, there is an end of the contention that in fixing the price the President was bound to take into consideration certain circumstances, namely, the cost of production and a reasonable profit and the plaintiff’s claim that an obligation arose out of the duty to consider these circumstances falls.
It is well to call attention to the fact that in the paragraphs of section 25, covering the taking over óf the plant or the taking over of the whole product of the plant, Congress has treated, in each case, the act in so doing as a taking of property and has provided for compensation and a method for the recovery thereof, whereas in the first paragraph of the act, which deals with fixing the price, no compensation is mentioned or suggested and, of course, no method for the recovery thereof provided, showing that Congress did not intend to compensate for any loss by reason of fixing the price. Again, it will be noted that in the two cases above mentioned of taking over the plant and the taking over of the output the act provides no penalties for any obstruction, delay, or violation of the provisions relative thereto by the owners, whereas in the case of fixing the price a penalty is provided for failure to conform to the price and regulations prescribed. It will be readily seen that had Congress intended to allow compensation and had provided for compensation and a method of securing it, no provision for a penalty *447 would be necessary, as there would be no reason or inducement for the plaintiff to violate the act.
The direct compensation, if the word may be used in this connection, contemplated by Congress to the producer and dealer was the price as it might be fixed. If he did not see fit to accept this as satisfactory, Congress in effect said:
“We will not compel you to accept the price fixed; you can stop producing, and if it is deemed advisable the Government- will take over your mine and operate it, in which event proper compensation and a method of securing it has been provided. But if you sell at the price fixed you have made your choice and must abide by it and can recover no compensation. You can not with one hand collect from the purchaser the price of your coal at the price fixed and then with the other hand collect from the Government the loss brought about by your voluntary act.”
If a producer could not produce and sell his coal at the price fixed except at a loss, the trouble was with the character of his mine and business and not the act of the Government in fixing the price. Certainly, as in this case, the act was not passed to guarantee a profit to an unproductive business which apparently could not compete with others in the same line except possibly in seasons of abnormal profit.
The plaintiff further complained of the dismissal by the Fuel Administration of its petition to be allowed to sell at a higher price than its competitors in the same field because it could not produce its coal at the price fixed. The dismissal was caused, the plaintiff alleges, by the fact that it failed and was unable to comply with an unreasonable regulation which required that before a petition for higher prices could be considered there should be filed therewith a statement signed by the majority of the operators in the district in which its mine was located, to the effect that the plaintiff was operating under conditions peculiar to itself, which statement it was unable to obtain. The act, in terms, authorized the President to prescribe regulations, and if it did not he could do so under the power given him to fix prices. • His act in prescribing such regulations in fixing the price or the reasonableness thereof when prescribed, it is plain, is not a matter for action or review by this court.
*448 As bas been said, this case is controlled by the previous decisions of this court in the cases cited, and the demurrer should be sustained and the petition dismissed, and it is so ordered.
Hat, Judge,; DowNet, Jud,ge; Booth, Judge; and Campbell, Chief Justice, concur.